# In the United States Court of Federal Claims

MATTHEW-ALLEN MCCASTER,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

No. 24-cv-2027

Filed: August 11, 2025

## MEMORANDUM AND ORDER

Plaintiff Matthew-Allen McCaster, proceeding *pro se*, brings this action "as Chief of the Mathias El Tribe" under the Indian Tucker Act, alleging that the United States violated its trust obligations to the tribe by failing to provide tribal services. ECF No. 15 (Am. Compl.) at 1–2, 5; *see also* ECF No. 18 (Resp.) at 1 (listing plaintiff in case caption as "Mathias El Tribe, by and through Chief Matthew-Allen McCaster"). Specifically, Plaintiff contends he is the "Chief of the Mathias El Tribe, a remnant Choctaw family group with ancestral ties to the Choctaw Nation . . . ." Am Compl. at 1.[1] Plaintiff references many sources of law that he claims establish this trust or fiduciary duty, including statutes, regulations, and an Executive Order. *Id.* at 1–3, 5. Plaintiff seeks equitable, declaratory, and punitive relief. *Id.* at 3–4; Resp. at 11–12.

After a thorough review of Plaintiff's claims and applicable law, this Court holds that it lacks subject matter jurisdiction over each of Plaintiff's claims. *First*, Plaintiff may not represent his alleged tribe *pro se* under this Court's Rules. *Second*, Plaintiff cannot pursue claims under the

---

[1] Citations throughout this Memorandum and Order reference the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

Indian Tucker Act in his personal capacity. *Third*, even construing Plaintiff's claims as being brought in his personal capacity under the Tucker Act, Plaintiff fails to invoke substantive sources of law that establish fiduciary or trust duties or mandate the payment of money. *Finally*, this Court lacks the authority to grant Plaintiff the relief he seeks. Accordingly, Defendant's Motion to Dismiss (ECF No. 16) is **GRANTED** pursuant to Rules 12(b)(1) and 12(h)(3) of the Rules of the United States Court of Federal Claims (Rule(s)).

## <u>PROCEDURAL HISTORY</u>

On December 9, 2024, Plaintiff filed his original Complaint, along with a Motion for Leave to Proceed *in forma pauperis*, and a Motion for a Preliminary Injunction. ECF No 1 (Original Complaint); ECF No. 3 (IFP Application); (ECF No. 4) (Motion for Preliminary Injunction). Defendant moved to dismiss Plaintiff's Original Complaint. ECF No. 9 (Original Motion to Dismiss). On March 13, 2025, after the parties had fully briefed Defendant's Original Motion to Dismiss, Plaintiff filed a Motion for Leave to File an Amended Complaint Out of Time. ECF No. 13 (Motion to Amend); *see* ECF Nos. 10, 11. The Court granted Plaintiff's Motion to Amend and denied both Plaintiff's Motion for Preliminary Injunction and Defendant's Original Motion to Dismiss as moot. ECF No. 14 at 2.

On March 19, 2025, Plaintiff filed his Amended Complaint. Am. Compl.[2] Defendant timely moved to dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6). ECF No. 16 (Mot.). Plaintiff responded to Defendant's Motion to Dismiss on April 18, 2025, and Defendant replied on May 2, 2025. Resp.; ECF No. 19 (Reply).

---

[2] Plaintiff's Amended Complaint attaches a declaration from Plaintiff that provides additional detail regarding Plaintiff's claims. Am. Compl. at 5–6. For ease of reference, the Court references the declaration as part of the Amended Complaint.

## FACTUAL HISTORY

As noted, Plaintiff alleges he is the "Chief of the Mathias El Tribe, a remnant Choctaw family group with ancestral ties to the Choctaw Nation . . . ."  Am. Compl. at 1; *see also id.* at 5 (describing the Mathias El Tribe as a "sovereign Indigenous tribal community" which "exercises its inherent rights to self-governance").  Plaintiff brings this action under the Indian Tucker Act in his official capacity as "Chief of the Mathias El Tribe" on behalf of his alleged tribe.  *Id.* at 5; *see also id.* at 3 (framing claims as "[l]egal [c]laims [u]nder the Indian Tucker Act); Resp. at 1 (listing plaintiff in case caption as "Mathias El Tribe, by and through Chief Matthew-Allen McCaster").

Broadly, "Plaintiff seeks redress for the United States' breach of its federally mandated trust obligations, violation of treaty rights, and failure to uphold its fiduciary duty to Indigenous peoples—actions that, taken together, constitute systemic violations against a sovereign Indigenous people."  *Id.* at 1; *see id.* at 6 (noting Plaintiff's *tribe* has been "subjected to . . . systemic violations").  Plaintiff contends that the Treaty of Dancing Rabbit Creek as well as other treaties and numerous sources of law confirm the existence of trust duties between the Government and the Mathias El Tribe.  Treaty With the Choctaw, Sept. 27, 1830, 7 Stat. 333 (hereinafter Treaty of Dancing Rabbit Creek); *see, e.g.*, Am. Compl. at 2–3, 6; Resp. at 1.  Thus, Plaintiff asserts the alleged revocation and denial of services to his tribe constitutes a breach of treaty and trust obligations by the United States, which Plaintiff believes provides him with a cause of action under the Indian Tucker Act on behalf of his tribe.  Am. Compl. at 3, 6.

Specifically, Plaintiff brings claims for breach of fiduciary or trust duty, violation of treaty rights, and "unlawful actions against protected rights."  *Id.* at 3 (citation modified).  Plaintiff identifies various sources of law that he claims codify the Government's obligations to his tribe, including (i) statutes, (ii) an executive order, (iii) treaties, and (iv) the Constitution.  These include: (i) the Indian Self Determination and Education Assistance Act (ISDEAA), 25 U.S.C. §§ 5301 *et*

*seq.*;[3] (ii) the Social Security Act (SSA), 42 U.S.C. § 407(a); (iii) the Indian Non-Intercourse Act (INIA), 25 U.S.C. § 177; (iv) Tribal Temporary Assistance to Needy Families (Tribal TANF), 42 U.S.C. § 612; (v) the Indian Healthcare Improvement Act (IHCIA), 25 U.S.C. §§ 1601 *et seq.*; and (vi) the National Historic Preservation Act (NHPA), 54 U.S.C. § 306108.  *Id.* at 1–3, 6.  Plaintiff next cites Executive Order 14,112, entitled "Reforming Federal Funding and Support for Tribal Nations To Better Embrace Our Trust Responsibilities and Promote the Next Era of Tribal Self-Determination."  *Id.* at 1, 6; Exec. Order No. 14,112, 88 Fed. Reg. 86,021 (Dec. 11, 2023).  Plaintiff also cites the Treaty of Dancing Rabbit Creek and references "related treaties."  *Id.* at 2.  Finally, in his Response, Plaintiff alleges violations of the Equal Protection Clause of the Fourteenth Amendment.[4]  Resp. at 5–6 ("[W]hat I now explicitly assert—is a violation of the Equal Protection Clause of the Fourteenth Amendment . . . .").

---

[3] Plaintiff specifically cites 25 U.S.C. § 5304(e).  Section 5304(e) defines Indian Tribes as "any Indian tribe, band, nation, or other organized group or community . . . which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians."  25 U.S.C. § 5304(e).

[4] Plaintiff first raises this claim under the Equal Protection Clause of the Fourteenth Amendment in his Response.  Resp. at 5–6.  As such, this claim and other claims added in subsequent filings are not properly before the Court.  *Kimble v. United States*, 991 F.3d 1238, 1244 (Fed. Cir. 2021) ("[D]istinct claims are waived if not pled in a complaint.").  Regardless, this Court lacks jurisdiction to hear claims arising under the Equal Protection Clause, because it is not a money-mandating provision of federal law.  *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995); *Barksdale v. United States*, No. 25-1386, 2025 WL 1214725, at *1 & n.2 (Fed. Cir. Apr. 28, 2025).  Accordingly, Plaintiff's Equal Protection Clause claim must be dismissed.

Plaintiff also raised new statutes and regulations for the first time in his Response, including: 42 C.F.R. § 137.202, a subchapter concerning tribal self-governance; 25 C.F.R. §§ 900.18–.22, which concerns contracts under the ISDEAA; the Indian Reorganization Act, 25 U.S.C. §§ 5101–29; the Indian Child Welfare Act of 1978, 25 U.S.C. §§ 1901 *et seq.*; the Native American Housing and Self-Determination Assistance Act, 25 U.S.C. §§ 4101 *et seq.*; a different provision of the NHPA,  54 U.S.C. § 302706; 36 C.F.R. § 800.2; the Indian Civil Rights Act of 1968, 25 U.S.C. §§ 1304 *et seq.*; the Tribal General Welfare Exclusion Act of 2014, 26 U.S.C. § 139E; the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281; the American Rescue Plan Act of 2021, Pub. L. No. 117-2, 135 Stat. 4.  Resp. at 4–5, 7.  These claims are not properly before the Court as they were improperly raised for the first time in Plaintiff's

Plaintiff also asserts several examples of "[s]ystematic [b]reaches" of alleged duties by the United States. Am. Compl. at 2. These allegations include: (i) denial of HHS Tribal Funding application, (ii) denial of Tribal TANF assistance by the Owens Valley Career Development Center, (iii) "[u]nlawful" termination of health services by Kern County, California, (iv) foreclosure by Carrington Mortgage on land held in trust, and (v) "[g]arnishment of federally protected disability benefits by the California Franchise Tax Board in violation of 42 U.S.C. §407(a)." *Id.*; *see also* Resp. at 6 (alleging similar "systemic breaches").[5] According to Plaintiff, these alleged breaches demonstrate the Government's failure in upholding trust duties and treaty obligations. Am. Compl. at 2, 3.

Plaintiff seeks broad relief, including policy reforms, federal recognition of the Mathias El Tribe,[6] an injunction preventing future denial of benefits, financial relief, and compensation for

---

Response and not included in his Complaint. *Kimble*, 991 F.3d at 1244 ("[D]istinct claims are waived if not pled in a complaint.").

[5] Plaintiff alleges breaches by entities that are not the United States, including the Owens Valley Career Development Center (OVCDC); Kern County, California; the California Franchise Tax Board; and Carrington Mortgage. Am. Compl. at 2; *see also* Resp. at 8 (referring to the "Owens Valley Career Development Center"). The Court must dismiss Plaintiffs claims against these entities because it is well established that this Court may only hear claims against the United States. *United States v. Sherwood*, 312 U.S. 584, 588 (1941) ("[I]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of [this] court."); *see also Tanser v. United States*, No. 25-1226, 2025 WL 1892738, at *1 (Fed. Cir. July 9, 2025) (quoting *Sherwood*, 312 U.S. at 588) (finding that "[c]laims that seek relief 'against others than the United States' are 'beyond the jurisdiction of the [court of Federal Claims]'" even if the United States was named as a defendant). Accordingly, the Court dismisses all claims not brought against the United States. *Lofton v. United States*, No. 24-1959, 2025 WL 350360, at *1 (Fed. Cir. Jan. 31, 2025) (citing 28 U.S.C. § 1491(a)(1) ("The United States is the only proper defendant in the Claims Court.").

[6] Plaintiff asks the Court for a declaration that the Mathias El Tribe is federally recognized under the definition of Indian Tribe under 25 U.S.C. § 5304(e)). Am. Compl. at 4. However, federal recognition for tribes does not depend on the definition of Indian Tribe under Section 5304(e). Rather, the federal government can recognize an Indian Tribe in one of three ways: by (1) treaty, (2) statute, or (3) an executive determination based on delegated authority from Congress. *Samish Indian Nation v. United States*, 419 F.3d 1355, 1369–70 (Fed. Cir. 2005) (first citing *Cherokee*

"financial losses, emotional distress, and harm to tribal sovereignty."  Am. Compl. at 3–4; *see also* Resp. at 11–12 (requesting additional relief).

## APPLICABLE LEGAL STANDARDS

It is well established that the Court of Federal Claims is not a forum for all federal claims; it is one of limited jurisdiction.  *See Marcum LLP v. United States*, 753 F.3d 1380, 1382 (Fed. Cir. 2014).  Generally, the Tucker Act defines this Court's jurisdiction.  *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009) (citing 28 U.S.C. § 1491(a)(1)).  Through the Tucker Act, which acts as a waiver of sovereign immunity, Congress has placed within this Court's jurisdiction any suit against the United States for money damages "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  The Tucker Act does not create any enforceable right against the United States on

---

*Nation v. Georgia*, 30 U.S. 1, 16 (1831); then citing *Chippewa Indians of Minn. v. United States*, 307 U.S. 1, 4–5 (1939); and then citing 25 U.S.C. §§ 2, 9).  Since 1978, the Department of the Interior has adopted a regulatory scheme, now codified at 25 C.F.R. § 83.2, to govern federally acknowledgement of tribes.  *Id.* at 1358 (citing 25 C.F.R. § 83.2).  Here, Plaintiff asserts that the Mathias El Tribe is federally recognized based on his conclusion that the legal status of tribes does not depend "on whether a name appears on a BIA list."  Resp. at 7.  Indeed, the Mathias El Tribe does not appear on the list of recognized tribes in the Federal Register or on the Bureau of Indian Affairs' (BIA) website.  *See Indian Tribal Entities Within the Contiguous 48 States Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs*, 89 Fed. Reg. 944 (Jan. 8, 2024); Bureau of Indian Affairs: Tribal Leaders Directory, https://experience.arcgis.com/experience/20ad1b9c9f4a40a586f3a4c72abe30bf (last visited Aug. 11, 2025).  Further, Plaintiff's Response appears to acknowledge that the Mathias El Tribe is absent from BIA's listing of federally recognized tribes.  Resp. at 11 (requesting that this Court declare that "denial of [tribal benefits] based solely on absence from the BIA's Part 83 list is unlawful").  Additionally, an email attached to Plaintiff's Amended Complaint notes that the Mathias El Tribe is not federally recognized.  Am. Compl. at 20 (attaching email from Indian Health Services, stating that "IHS programs have specific eligibility requirements . . . that includes the entity being a federally recognized tribe.  As Mathias El Tribe does not meet that requirement, the Tribe is not eligible for this opportunity").

its own nor does it grant jurisdiction for "every claim invoking the Constitution, a federal statute, or a regulation." *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 322 (2020) (quoting *United States v. Mitchell*, 463 U.S. 206, 216 (1983) (*Mitchell II*)).  Instead, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc).

Similarly, the Indian Tucker Act, also a waiver of sovereign immunity, allows for "any tribe, band, or other identifiable group of American Indians residing within the territorial limits of the United States" to bring suit in the Court of Federal Claims.  28 U.S.C. § 1505.  It is "intended to give tribal claimants the same access to the Court of Claims provided to individuals by the Tucker Act." *United States v. Mitchell*, 445 U.S. 535, 539 (1980) (*Mitchell I*).  For this Court to have jurisdiction under the Indian Tucker Act, just as under the Tucker Act, "a tribal plaintiff must invoke a rights-creating source of substantive law that 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'" *United States v. Navajo Nation*, 537 U.S. 488, 503 (2003) (*Navajo I*) (quoting *Mitchell II*, 463 U.S. at 218); *see also United States v. Navajo Nation*, 556 U.S. 287, 290–91 (2009) (*Navajo II*) (describing jurisdiction under the Indian Tucker Act).

This Court must dismiss claims outside its subject matter jurisdiction and "must address jurisdictional issues, even *sua sponte*, . . . whether raised by a party or not . . . ." *St. Bernard Par. Gov't v. United States*, 916 F.3d 987, 992–93 (Fed. Cir. 2019); *Kissi v. United States*, 493 F. App'x 57, 58 (Fed. Cir. 2012) (citing Rule 12(h)(3)) ("If the Court of Federal Claims determines that it lacks subject matter jurisdiction, it must dismiss the claim."); Rule 12(h)(3).  When deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, this Court "accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most

favorable to the plaintiff." *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014); *see Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). Where "a motion to dismiss 'challenges the truth of the jurisdictional facts,' the Court of Federal Claims 'may consider relevant evidence in order to resolve the factual dispute.'" *Freeman v. United States*, 875 F.3d 623, 627 (Fed. Cir. 2017) (quoting *Banks*, 741 F.3d at 1277); *see also Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988) (citing *Land v. Dollar*, 330 U.S. 731, 735 (1947)) (same).

Rule 41(b) permits this Court to "dismiss on its own motion" an action where the plaintiff fails to (i) prosecute her case or (ii) comply with this Court's Rules or Orders. Rule 41(b). Additionally, Rule 83.1 mandates that "[a]n individual who is not an attorney . . . may not represent a corporation, an entity, or any other person in any proceeding before this court." Rule 83.1(a)(3). When a plaintiff "attempts to proceed without counsel in violation of [Rule] 83.1(a)(3), the claim must be dismissed under [Rule] 41(b)." *Monbo v. United States*, No. 24-890, 2024 WL 5165707, at *5 (Fed. Cl. Dec. 19, 2024), *appeal dismissed*, No. 25-1322, 2025 WL 457326 (Fed. Cir. Feb. 11, 2025); *see also Aljindi v. United States*, No. 24-1997, 2025 WL 440123, at *5 (Fed. Cir. Feb. 10, 2025) (affirming dismissal under Rule 41(b) for violation of Rule 83.1).

The Court liberally construes complaints filed by *pro se* plaintiffs because *pro se* filings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). *Pro se* plaintiffs, however, must still prove by a preponderance of the evidence that this Court has subject matter jurisdiction. *Roman v. United States*, 61 F.4th 1366, 1370 (Fed. Cir. 2023); *see also Colbert v. United States*, 617 F. App'x 981, 983 (Fed. Cir. 2015) (citing *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995)) ("The lenient pleading standards afforded to a

*pro se* plaintiff are not so lenient that they may forgive the failure to state a claim that falls within the [C]ourt's jurisdiction, however.") (italics added).

## <u>DISCUSSION</u>

Even under the most liberal construction, Plaintiff's claims fall outside this Court's limited jurisdiction. Accordingly, this Court must dismiss Plaintiff's claims for four reasons. *First*, Plaintiff cannot represent the Mathias El Tribe *pro se* under this Court's Rules. *Second*, Plaintiff cannot bring Indian Tucker Act Claim in his individual capacity. *Third*, Plaintiff cites no source of law that establishes a fiduciary or other duty for, or the payment of money to, Plaintiff personally. *Finally*, this Court cannot grant Plaintiff the relief he requests.

## I.    **Plaintiff Cannot Represent the Mathias El Tribe *Pro Se*.**

Plaintiff asserts that he brings this action under the Indian Tucker Act "as Chief of the Mathias El Tribe." Am. Compl. at 5 (noting that Plaintiff brought this action "under the Indian Tucker Act" and in his capacity "as Chief of the Mathias El Tribe"); *see also id.* at 4 (noting that "[t]he Mathias El Tribe's legal standing is clear"); *id.* at 1 (explaining that action is brought under the Indian Tucker Act); Resp. at 1 (listing plaintiff in case caption as "Mathias El Tribe, by and through Chief Matthew-Allen McCaster"). Under Rule 83.1, however, Plaintiff cannot represent his tribe *pro se*. Rule 83.1(a)(4) ("[P]ersons who are not attorneys may not represent a corporation, an entity, or any other person in any proceeding before this court."); *Williams v. United States*, 482 F. App'x 580, 582 (Fed. Cir. 2012) (concluding that "[t]he Claims Court correctly held that [plaintiff's] *pro se* status barred her from asserting claims" on behalf of an Indian Tribe); *Monbo*, 2024 WL 5165707, at *5, *appeal dismissed*, 2025 WL 457326 (explaining that Rule 83.1(a)(3) is "direct and contemplates no exceptions"). Further, Plaintiff does not allege that he is an attorney. *See* Am. Compl.; Rule 83.1(b) (permitting only attorneys who are authorized to practice under the

Court's Rules to represent parties in this Court). Accordingly, this Court must dismiss Plaintiff's claims that are brought on behalf of the Mathias El Tribe under Rule 41(b) for failure to comply with Rule 83.1.[7] Rule 41(b) ("If the plaintiff fails . . . to comply with these rules or a court order, the court may dismiss . . . the action or any claim against it."); *Aljindi*, 2025 WL 440123, at *5; *Williams*, 482 F. App'x at 582.

## II. Plaintiff May Not Bring Claims Under the Indian Tucker Act in His Personal Capacity.

As Plaintiff may not represent the Mathias El Tribe *pro se*, Plaintiff is left to pursue claims only brought in his personal capacity. It is well-established, however, that Plaintiff may not bring claims under the Indian Tucker Act in his personal capacity under the plain text of the Indian Tucker Act, which provides that only a "tribe, band, or other identifiable group" may pursue claims under the Indian Tucker Act. 28 U.S.C. § 1505. Thus, the Indian Tucker Act does not apply to claims brought by individual Indians. *Id.*; *Tsosie v. United States*, 825 F.2d 393, 401 (Fed. Cir. 1987) ("[A]n Indian tribe can sue . . . under 28 U.S.C. § 1505 and an individual Indian can sue under 28 U.S.C. § 1491."); *Fields v. United States*, 423 F.2d 380, 383 (Ct. Cl. 1970). Therefore, Plaintiff cannot lodge claims under the Indian Tucker Act on his own behalf.

---

[7] Even if Plaintiff was an attorney, Plaintiff's claim would still fail because his tribe is not federally recognized. *Supra* note 6. This is because "[f]ederal recognition or acknowledgement is a prerequisite to an Indian tribe's right to claim benefits under federal statutes." *Samish Indian Nation*, 419 F.3d at 1358 (citing 25 C.F.R. § 83.2); *see also Wyandot Nation of Kansas v. United States*, 858 F.3d 1392, 1398 (Fed. Cir. 2017) (noting same). Regardless, it is beyond the jurisdiction of this Court to declare that Plaintiff's tribe is a federally recognized tribe. *Samish Indian Nation*, 419 F.3d at 1370 (citing *United States v. Holliday*, 70 U.S. (3 Wall) 407, 419 (1865)) ("As a political determination, tribal recognition is not justiciable."). Therefore, even if he was an attorney, Plaintiff's claims asserted on behalf of his tribe would fail both because the Mathias El Tribe is not federally recognized and because this Court lacks authority to recognize the tribe.

III.    **Even if Plaintiff Asserted Claims on His Own Behalf Under the Tucker Act, This Court Would Still Lack Jurisdiction Over Plaintiff's Claims.**

As Plaintiff may neither bring claims on behalf of his tribe nor bring claims in his personal capacity under the Indian Tucker Act, the Court—construing Plaintiff's claims liberally—evaluates Plaintiff's claims as if they were brought in Plaintiff's individual capacity under the Tucker Act. *See Tsosie*, 825 F.2d at 401 ("[A]n Indian tribe can sue . . . under 28 U.S.C. § 1505 and an individual Indian can sue under 28 U.S.C. § 1491."). Even doing so, Plaintiff's claims fail.

When evaluating breach of trust claims between an Indian and the Government, the Court applies a two-part test. *Fletcher v. United States*, 26 F.4th 1314, 1324–25 (Fed. Cir. 2022) (applying twostep test to individual Indian's claims under the Tucker Act). *First*, a plaintiff "must identify a substantive source of law that establishes specific fiduciary or other duties, and allege that the Government has failed faithfully to perform those duties." *Id.* at 1324 (quoting *Navajo II*, 556 U.S. at 290); *see also Hopi Tribe v. United States*, 782 F.3d 662, 667 (Fed. Cir. 2015) ("[A] statute or regulation that recites a general trust relationship between the United States and the Indian People is not enough to establish any particular trust duty."). "While it is true that a statute need not contain the word 'trust' in order to create a trust relationship, the failure to use that term gives rise to doubt that a trust relationship was intended." *Wolfchild v. United States*, 559 F.3d 1228, 1238 (Fed. Cir. 2009). *Second*, a "court must [] determine whether the relevant source of substantive law 'can fairly be interpreted as mandating compensation for damages sustained as a result of a breach of the duties the governing law imposes.'" *Fletcher*, 26 F.4th at 1325 (quoting *Navajo II*, 556 U.S. at 290–91); *see also Me. Community Health*, 590 U.S. at 324 (noting that "so-called money-mandating provisions are uncommon"). Thus, if a source of law fails to either establish a fiduciary or other duty *or* is not money-mandating, the Court must dismiss the case for lack of jurisdiction. *Fletcher*, 26 F.4th at 1324–25. Accordingly, if a source of law is not money-

mandating, that source of law cannot be the basis for a breach of trust action.  *Id.*; *see also Fisher*, 402 F.3d at 1172 ("[A] plaintiff must identify a separate source of substantive law that creates the right to money damages.").

As only claims brought by Plaintiff in his personal capacity remain, to establish subject matter jurisdiction Plaintiff must identify a substantive source of law that (1) establishes a specific duty *to Plaintiff*, and (2) provides for money damages *to Plaintiff* for a breach of that duty. *Fletcher*, 26 F.4th at 1324–25.  Indeed, this is because "[i]mplicit in these requirements is the logical premise that the asserted source of a duty must apply to the particular plaintiffs' claim: plaintiffs cannot invoke a statute as a source of money-mandating rights or duties if the basis for their complaint falls outside the statute's domain."  *Wolfchild v. United States*, 731 F.3d 1280, 1288–89 (Fed. Cir. 2013) (quoting *Navajo II*, 556 U.S. at 299–300) (citation modified).  Put differently, "[t]he statute must, of course, be money-mandating as to the particular class of plaintiffs."  *Greenlee Cnty., Ariz. v. United States*, 487 F.3d 871, 876 n.2 (Fed. Cir. 2007).

As the Court explains below, the sources of law Plaintiff cites do not establish a fiduciary, trust, or other duty between Plaintiff and the United States that mandates the payment of money as damages.  The Court addresses each of the sources of law Plaintiff invokes in his Amended Complaint in turn.

## A.    The Treaty of Dancing Rabbit Creek Does Not Mandate the Payment of Money Damages.

Plaintiff repeatedly asserts that he is entitled to benefits pursuant to the Treaty of Dancing Rabbit Creek.  *See* Am. Compl. at 1–2, 5–6.  As explained below, the Treaty of Dancing Rabbit Creek does not mandate money for a breach of any alleged fiduciary or other duty.

"The interpretation of a treaty, like the interpretation of a statute, begins with its text." *Medellín v. Texas*, 552 U.S. 491, 506 (2008).  Treaties entered with Indian Tribes are treated as

"essentially contract[s] between two sovereign nations." *Greene v. United States*, 100 F.4th 1364, 1368 (Fed. Cir. 2024) (quoting *Washington v. Wash. State Com. Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 675 (1979)); *see also Tsosie*, 825 F.2d at 401 (noting that Indian treaties are "a species of contract"). Treaty claims may entitle an Indian plaintiff to monetary relief "in the event of the government's breach of that contract." *Greene*, 100 F.4th at 1369 (quoting *Ransom v. United States*, 900 F.2d 242, 244 (Fed. Cir. 1990)).

Plaintiff specifically asserts that Article XIV of the Treaty of Dancing Rabbit Creek "expressly" protects his tribe and guarantees the provision of services by the federal government. Resp. at 2. Article XIV of the Treaty states:

> Each Choctaw head of a family being desirous to remain and become a citizen of the States, shall be permitted to do so, by signifying his intention to the Agent within six months from the ratification of this Treaty, and he or she shall thereupon be entitled to a reservation of one section of six hundred and forty acres of land, to be bounded by sectional lines of survey; in like manner shall be entitled to one half that quantity for each unmarried child which is living with him over ten years of age; and a quarter section to such child as may be under 10 years of age, to adjoin the location of the parent. If they reside upon said lands intending to become citizens of the States for five years after the ratification of this Treaty, in that case a grant in fee simple shall issue; said reservation shall include the present improvement of the head of the family, or a portion of it. Persons who claim under this article shall not lose the privilege of a Choctaw citizen, but if they ever remove are not to be entitled to any portion of the Choctaw annuity.

Treaty of Dancing Rabbit Creek, art. XIV. Under this treaty, "the Choctaw Nation of Indians ceded to the United States the entire country they owned and possessed east of the Mississippi river, and agreed to remove beyond the Mississippi river as early as practicable." *Choctaw Nation v. United States*, 119 U.S. 1, 37 (1886) (citing Treaty of Dancing Rabbit Creek, art. III). "But, in order to induce consent of the Choctaw Nation," the United States included provisions such as Article XIV, reproduced above. *Id.* Under Article XIV, "the head of every Choctaw family who desired to remain and become a citizen of the United States was entitled to do so," if the head of the family "signif[ied] his intention . . . within six months from the ratification of" the treaty. *Id.*

(citing Treaty of Dancing Rabbit Creek, art. XIV); Treaty of Dancing Rabbit Creek, art. XIV. Those who opted to stay in their original land were allotted a reservation of land, which would transfer in fee simple so long as they remained on the land for five years intending to remain and become citizens of the United States. *Choctaw Nation*, 119 U.S. at 37 (citing Treaty of Dancing Rabbit Creek, art. XIV). Nothing in Article XIV mandates the payment of damages to individual Indians such as Plaintiff.[8] *Id.*, art. XIV; *see Fletcher*, 26 F.4th at 1324–25.

More broadly, Plaintiff contends that the Treaty of Dancing Rabbit Creek "impose[s] binding obligations on the federal government to protect the lands, rights, and cultural integrity of the Choctaw people." Am. Compl. at 2. However, as other judges of this Court have similarly recognized, "[a]lthough the Treaty of Dancing Rabbit Creek could be read to protect members of the Choctaw [] Nation[] from state laws, [it] do[es] not have clauses that authorize money damages and therefore the court lacks jurisdiction." *Moore v. United States*, 163 Fed. Cl. 591, 595 (2022); *see also Williamson v. United States*, No. 23-263C, 2023 WL 3032952, at *2 (Fed. Cl. Apr. 20, 2023), *appeal dismissed*, No. 23-1959, 2023 WL 7039495 (Fed. Cir. Oct. 26, 2023). Accordingly, because Article XIV of the Treaty of Dancing Rabbit Creek does not contain a money-mandating

---

[8] Further, in *Choctaw Nation*, the Supreme Court rejected an argument that the Treaty mandated payment of money for the lands ceded in the Treaty, concluding that the Treaty of Dancing Rabbit Creek only provided money payments for (1) "the necessary expenditures in removing the Indians," (2) "an annuity of $20,000 for 20 years, commencing after their removal to the west"; and (3) "the amount to be expended in the education of 40 Choctaw youths for 20 years, and for the support of three teachers of schools for 20 years, together with the cost of erecting some public buildings, and furnishing blacksmiths, weapons, and agricultural implements," and (4) "the several annuities and sums secured under former treaties to the Choctaw Nation and people." *Choctaw Nation*, 119 U.S. at 38. Plaintiff's claims do not fit into any of these categories of money-mandating provisions. Further, these money mandating sources apply to the members of the Choctaw who moved west. *Id.*; Treaty of Dancing Rabbit Creek, art. XIV. Plaintiff, however, asserts that his tribe descends from "remnant family groups . . . whose members remained within their traditional homelands." Am. Compl. at 2. Thus, even if Plaintiff could bring claims on behalf of his tribe under this Treaty, Plaintiff's claims would fail.

provision between the Government and Plaintiff individually, Plaintiff's breach of trust claims under the Treaty must be dismissed for lack of jurisdiction. *Fletcher*, 26 F.4th at 1324–25.

### B.     The Indian Self Determination and Education Assistance Act (ISDEAA) is Not Money-Mandating in this Context.

Plaintiff asserts that the ISDEAA provides him with standing to bring this action. Am. Compl. at 1 ("Plaintiff's standing is firmly grounded in the [ISDEAA] . . . ."). Plaintiff specifically invokes Section 5304(e) of the ISDEAA, a definitional provision. 25 U.S.C. § 5304(e); Am. Compl. at 1, 5. Section 5304(e) defines "Indian Tribe" as "any Indian tribe, band, nation, or other organized group or community . . . which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians." 25 U.S.C. § 5304(e). Nothing in this definitional provision is "reasonably amenable to the reading that it mandates a right of recovery in damages . . . ." [9] *Jan's Helicopter Serv., Inc. v. United States*, 525 F.3d 1299, 1307 (Fed. Cir. 2008) (quoting *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003)); *see also Doiban v. United States*, 173 Fed. Cl. 527, 543 n.12 (2024) (noting that "definitional provisions are plainly not money-mandating").

---

[9] Even if Plaintiff referenced a money mandating portion of the ISDEAA, the ISDEAA governs how Indian *tribes* spend money pursuant to contracts with the federal government. *See Becerra v. San Carlos Apache Tribe*, 602 U.S. 222, 234 (2024) (noting a tribe must control and spend appropriated money in compliance with a contract between itself and the United States); *Cherokee Nation of Oklahoma v. Leavitt*, 543 U.S. 631, 634 (2005) ("The [ISDEAA] . . . authorizes the Government and Indian *tribes* to enter into contracts . . . .") (citing 25 U.S.C. § 5301 *et seq.*) (emphasis added). Thus, the ISDEAA creates no duty on behalf of the United States to Plaintiff individually. *See supra* § I (explaining that Plaintiff may not bring claims on behalf of his tribe *pro se*). Finally, even if Plaintiff could bring this claim on behalf of his tribe, the Federal Circuit has found that the ISDEAA does not "establish a damage remedy . . . for non-payment of the underlying benefits." *Samish Indian Nation*, 419 F.3d at 1367.

**C.      Plaintiff Failed to Identify a Money-Mandating Provision in The Indian Health Care Improvement Act (IHCIA).**

Plaintiff asserts that the IHCIA contains a trust duty to provide healthcare to his tribe.  Am. Compl. at 6; Resp. at 7, 11.  The IHCIA, however, spans an entire chapter within Title 25 of the United States Code, containing over eighty sections.  *See* 25 U.S.C. §§ 1601 *et seq.*  Plaintiff fails to identify a specific provision of the IHCIA that creates any duties or mandates the payment of money.  Am. Compl. at 6.  Indeed, "a plaintiff cannot obtain jurisdiction by simply listing numerous congressional acts in the hopes that one of the many statutes encompassed within those acts is money-mandating . . . ."  *Hollowell v. United States*, No. 24-711, 2025 WL 1564761, at *7 (Fed. Cl. June 3, 2025).  A failure to identify a specific fiduciary or other duty within a substantive source of law does not adequately establish jurisdiction under the Tucker Act.  *See Fletcher*, 26 F.4th at 1324 (noting that "[i]n the context of breach of duties to American Indians" a plaintiff must identify "specific statutes, regulations, or other sources of law" to establish a fiduciary relationship); *Hopi Tribe*, 782 F.3d at 671 (quoting *Navajo II,* 556 U.S. at 302) (explaining that where a plaintiff fails to "identify a specific, applicable, trust-creating statute," the court need not address "whether the specific obligation is money mandating").

The only specific provision Plaintiff cites in the IHCIA is Section 1603(14), a definitional provision.  Resp. at 11; 25 U.S.C. § 1603(14).  This definitional provision cannot reasonably be interpreted as establishing monetary damages for any alleged breaches.[10]  *Jan's Helicopter Serv.*, 525 F.3d at 1307; *see also Doiban*, 173 Fed. Cl. at 543 n.12 (finding that "definitional provisions

---

[10] Further, the administration of the IHCIA is committed to the discretion of the executive agency; the statute "speak[s] about Indian health only in general terms" and provides "lump-sum appropriations."  25 U.S.C. §§ 1601 *et seq.*; *Lincoln v. Vigil*, 508 U.S. 182, 185, 192–94 (1993).  It is well established that "[a] statute is not money-mandating when it gives the government complete discretion over the decision whether or not to pay an individual or group."  *Doe v. United States*, 463 F.3d 1314, 1324 (Fed. Cir. 2006); *see also Allred v. United States*, 33 Fed. Cl. 349, 355 (1995) (explaining that IHCIA is not money mandating because of its discretionary language).

are plainly not money-mandating").  Accordingly, Plaintiff has failed to identify a specific portion of the IHCIA that creates a fiduciary or other duty between himself and the United States. *See Fletcher*, 26 F.4th at 1324.

> ### D. The National Historic Preservation Act (NHPA) Does Not Establish a Fiduciary or Other Duty.

Plaintiff asserts that the NHPA establishes a right to federal services for his tribe.  Am. Compl. at 6 (citing 54 U.S.C. § 306108).  The NHPA directs the "head of any Federal Agency" to "take into account the effect of the undertaking on any historic property" prior to authorizing federal funds.  54 U.S.C. § 306108.  As reflected in binding precedent, this statute plainly fails to establish a fiduciary or other duty between Plaintiff and the United States.  *White Mountain Apache Tribe v. United States*, 249 F.3d 1364, 1373 (Fed. Cir. 2001), *aff'd*, 537 U.S. 465 (explaining that the NHPA does not contain "fiduciary obligations that would lead to a claim for money damages").

> ### E. The Indian Non-Intercourse Act (INIA) Is Not Money-Mandating.

Plaintiff makes passing references to the INIA.  Am. Compl. at 3, 6.  The INIA prohibits the "conveyance of lands . . . from any Indian nation or tribe of Indians" unless it is part of a treaty or pursuant to the Constitution.  25 U.S.C. § 177.  As the Federal Circuit has already concluded that this statute cannot be fairly interpreted as mandating compensation, this Court lacks jurisdiction over any claims based upon the INIA.[11]  *White Mountain Apache Tribe*, 249 F.3d at 1373, *aff'd*, 537 U.S. 465 (first citing 25 U.S.C. § 177; and then quoting *Mitchell II*, 463 U.S. at 216–17).

---

[11] Even if the INIA was money-mandating, its plain text applies to "any Indian nation or tribe of Indians," not to individual Indians such as Plaintiff.  25 U.S.C. § 177.

**F.      Tribal Temporary Assistance to Needy Families (Tribal TANF) Does Not Create a Trust Duty with Plaintiff.**

Plaintiff lists denial of Tribal TANF as a systematic breach by the United States.  Am. Compl. at 2, 6.  Tribal TANF, however, approves funds to *Indian tribes* that have "an approved tribal family assistance plan."  42 U.S.C. § 612(a)(1)(A) ("[T]he Secretary shall pay to each Indian tribe that has an approved tribal family assistance plan a tribal family assistance grant for the fiscal year in an amount equal to the amount determined under subparagraph (B) . . . .").  This plainly neither creates a trust duty owed to Plaintiff individually, nor mandates the payment of damages to Plaintiff for a breach of that duty.  *Fletcher*, 26 F.4th at 1324–25.[12]

**G.      The Cited Provision of The Social Security Act (SSA) Is Not Money-Mandating.**

Plaintiff also claims "[u]nlawful garnishment of protected disability benefits" that allegedly violates Section 407(a) of the Social Security Act.  Am. Compl. at 2, 6; 42 U.S.C. § 407(a).  This claim must also be dismissed because Section 407(a) is not money-mandating.  Section 407(a) provides:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a).  Nothing in this text establishes a trust duty.  To begin, this provision lacks the word "trust," which "gives rise to doubt that a trust relationship was intended."  *Wolfchild*, 559 F.3d at 1238.  Further, the language cannot be construed as "reasonably amenable to the reading

---

[12] Further, Plaintiff alleges that the Owens Valley Career Development Center, not the United States denied the Tribal TANF services.  Am. Compl. at 2; Resp. at 8.  Accordingly, this Court lacks jurisdiction over such claims as they are not brought against the United States.  *Sherwood*, 312 U.S. at 588 ("[I]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of [this] court."); 28 U.S.C. § 1491(a).

that it mandates a right of recovery in damages . . . ." *Jan's Helicopter Serv.*, 525 F.3d at 1307

(quoting *White Mountain Apache Tribe*, 537 U.S. at 473).  Indeed, a money-mandating source of

law (1) "provide[s] 'clear standards for paying' money to recipients," (2) "state[s] the 'precise

amounts' that must be paid," or (3) "compel[s] payment on satisfaction of certain conditions."

*Samish Indian Nation*, 419 F.3d at 1365 (quoting *Perri v. United States*, 340 F.3d 1337, 1342–43

(Fed. Cir. 2003)).  This statute does none of these.  Accordingly, this Court lacks over Plaintiff's

breach of trust or fiduciary duty claim under Section 407(a).  *Fletcher*, 26 F.4th at 1324–25.[13]

### H.    Executive Order 14,112 Does Not Establish Any Trust Responsibilities or Fiduciary Duties.

Plaintiff claims Executive Order 14,112[14], entitled "Reforming Federal Funding and

Support for Tribal Nations To Better Embrace Our Trust Responsibilities and Promote the Next

Era of Tribal Self-Determination," establishes a trust duty.  Am. Compl. at 1, 6; Exec. Order No.

14,112, 88 Fed. Reg. 86,021 (Dec. 11, 2023).  This Executive Order, however, expressly states

that "*[t]his order is not intended to, and does not, create any right, benefit, or trust responsibility*,

substantive or procedural, enforceable at law or in equity by any party against the United States,

its departments, agencies, or entities, its officers, employees, or agents, or any other person."  Exec.

Order 14,112 (emphasis added).  Indeed, nothing in the plain text of the Executive Order

establishes a specific fiduciary or other duty or mandates compensation for damages sustained as

---

[13] Further, Plaintiff alleges that the "California Franchise Tax Board," a state entity, garnished his wages.  Am. Compl. at 2.  Plaintiff does not allege that the federal Government improperly took his wages.  *Id.*  As noted, this Court may only hear claims brought against the United States. *Sherwood*, 312 U.S. at 588 ("[I]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of [this] court."); 28 U.S.C. § 1491(a).

[14] Executive Order 14,112 was rescinded on March 14, 2025 by Executive Order 14,236 "Additional Rescissions of Harmful Executive Orders and Actions."  Exec. Order No. 14,236, 90 Fed. Reg. 13037 (Mar. 14, 2025).

a result of violation of that duty. *Fletcher*, 26 F.4th at 1324–25. Rather, the Executive Order simply seeks to better organize and implement access to funding and other federal programs for Indian Tribes. Exec. Order 14,112. Accordingly, even if the Executive Order was not rescinded, this Court would still lack jurisdiction over Plaintiff's related claim, as the Executive Order is not money-mandating in nature.

I.     **Plaintiff's Other, Catchall Arguments Fail to Establish This Court's Jurisdiction.**

Plaintiff asserts a breach of trust generally based on "all other applicable treaties, statutes, and executive orders addressing the rights, protections, and consultation obligations owed to Indigenous peoples." Am. Compl. at 6; *see also id.* at 2 (citing "related treaties"). However, "a plaintiff cannot obtain jurisdiction by simply listing numerous congressional acts in the hopes that one of the many statutes encompassed within those acts is money-mandating . . . ." *Hollowell*, 2025 WL 1564761, at *7; *see also Fletcher*, 26 F.4th at 1324 (noting that "[i]n the context of breach of duties to American Indians" a plaintiff must identify "specific statutes, regulations, or other sources of law" to establish a fiduciary relationship). Thus, Plaintiff cannot invoke this Court's jurisdiction simply by asserting "all other applicable" sources of law or "related treaties." Am. Compl. at 2, 6. Therefore, Plaintiff's catchall arguments lack the specificity required to establish the Court's jurisdiction.

\*     \*     \*

In sum, Plaintiff fails to invoke a substantive source of law establishing both a specific fiduciary or other duty owed by the United States to Plaintiff individually and monetary damages for a breach of that duty. *Fletcher*, 26 F.4th at 1324–25. Accordingly, the Court lacks subject matter jurisdiction over Plaintiff's claims brought in his personal capacity under the Tucker Act.

## IV.    This Court Cannot Grant Plaintiff the Relief He Requests.

This Court must also dismiss Plaintiff's claims for lack of jurisdiction because Plaintiff seeks relief that this Court cannot grant, including equitable, declaratory, and punitive relief.  *See* Am. Compl. at 4; Resp. at 11–12.  This Court only possesses the limited jurisdiction afforded by the Tucker Act's waiver of sovereign immunity to render "judgment . . . for liquidated or unliquidated damages" in cases "against the United States."  28 U.S.C. § 1491(a)(1); *United States v. King*, 395 U.S. 1, 4 (1969) ("[C]ases seeking relief other than money damages from the Court of Claims have never been 'within its jurisdiction.'").  This Court's ability to grant relief beyond money damages is highly circumscribed.[15]  *Shelden v. United States*, 742 F. App'x 496, 502 (Fed. Cir. 2018) ("[T]he Claims Court 'has no power to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment.'" (quoting *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998))); *see, e.g.*, 28 U.S.C. § 1491(a)(2) (permitting the Court, "as an incident of and collateral to any such judgment, [to] issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records").  Accordingly, this Court lacks jurisdiction over Plaintiff's claims for (1) equitable, (2) declaratory, and (3) punitive relief.  Am. Compl. at 4.

*First*, Plaintiff asks the Court to "[e]njoin further foreclosures, unauthorized taxation, and benefit denials."  Am. Compl. at 4; *see also* Resp. at 11–12 (listing similar requests under header "Injunctive Relief").  Plaintiff also seeks "court-ordered [policy] reforms," which may be

---

[15] The exception to this general rule comes in bid protests, where the Court is empowered to "award any relief that [it] considers proper, including declaratory and injunctive relief . . . ."  28 U.S.C. § 1491(b)(2); *see also Kanemoto v. Reno*, 41 F.3d 641, 644–45 (Fed. Cir. 1994) (explaining that this Court "cannot entertain claims for injunctive relief or specific performance, except in narrowly defined, statutorily provided circumstances").  As this action is not a bid protest, these exceptions do not apply.

understood as equitable or injunctive relief, including: "[p]roper recognition of historical and current Indigenous rights," "[a]ccurate representation of Indigenous history in educational curricula," "[e]nding the weaponization of federal program eligibility," and "mandat[ing] comprehensive policy reforms to ensure accurate education and federal compliance with trust responsibilities." Am. Compl. at 3–4.[16] Such requested equitable relief falls clearly outside this Court's jurisdiction. *Massie v. United States*, 226 F.3d 1318, 1321 (Fed. Cir. 2000) (citing *King*, 395 U.S. at 4) ("Except in strictly limited circumstances . . . there is no provision authorizing the Court of Federal Claims to order equitable relief."); *see also Me. Cmty. Health*, 590 U.S. at 327 ("[T]he Court of Federal Claims does not have the general equitable powers of a district court" (internal quotations omitted)). Accordingly, this Court lacks jurisdiction to grant Plaintiff equitable relief.

*Second*, Plaintiff seeks declaratory relief, including declaring that (i) his tribe is federally recognized, and (ii) his tribe is entitled to full federal protection, including protection of land and provision of health services. Am. Compl. at 4; Resp. at 11. Because this is not a bid protest, this Court lacks jurisdiction to issue such declaratory relief separately from monetary judgments. *Nat'l Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716–17 (Fed. Cir. 1998) ("The Court

---

[16] Plaintiff's Response also requested the following orders that can reasonably understood as requests for injunctive relief: "halting [] foreclosure proceedings and interference with real property held in trial trust;" reinstating his tribe's "eligibility under [the ISDA] for contract and compact participation in Indian health services;" restoring an IRS refund "acknowledged but intercepted;" returning "all funds seized through the Treasury Offset Program and misapplied to California state debt;" restoring "all tribal . . . services wrongfully denied;" rescinding "all penalties, garnishments, and offsets initiated by the [California] Franchise Tax Board;" and enjoining "further interference or denial of federally protected rights and benefits." Resp. at 11–12. Even if the claims first raised in the Response were not forfeited or waived, and were properly before the Court, which they are not, the Court would nonetheless lack jurisdiction to grant Plaintiff this equitable relief. *Kimble*, 991 F.3d at 1244; *Massie*, 226 F.3d at 1321; *Me. Cmty. Health*, 590 U.S. at 327.

of Federal Claims has never been granted general authority to issue declaratory judgments . . . ."); *supra* note 15; *see also King*, 395 U.S. at 4 ("[C]ases seeking relief other than money damages from the court of claims have never been 'within its jurisdiction.'"). Beyond this limitation, this Court lacks the authority to grant a tribe federal recognition. *Samish Indian Nation*, 419 F.3d at 1370 (citing *Holliday*, 70 U.S. at 419) ("As a political determination, tribal recognition is not justiciable."); *see supra* note 6 (discussing means by which an Indian tribe may gain federal recognition).

*Third*, Plaintiff seeks compensatory and punitive damages for "financial losses, emotional distress, and harm to tribal sovereignty."[17] Am. Compl. at 4; *see also* Resp. at 11 (requesting relief for "emotional, neurological, and spiritual harm" due to the Government's purported breach of fiduciary duty). This Court, however, may not award damages for emotional distress or reputational harm as such claims stem from torts. *See Garner v. United States*, 230 Ct. Cl. 941, 943 (1982) ("[R]elief for mental distress and psychological damage is founded in tort, which is also outside of the jurisdiction of this court."); *Jackson v. United States*, 664 F. App'x 922, 925 (Fed. Cir. 2016); 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have

---

[17] This Court may grant compensatory damages for breaches of contract or under the direction of a money-mandating statute. *See Boaz Housing Auth. v. United States*, 994 F.3d 1359, 1370 (Fed. Cir. 2021) (citing *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997)). However, as the Court has explained, Plaintiff fails to cite a statute that creates a trust duty or money damages for a breach of that duty. *Supra* § III. Further, for the first time in his Response, Plaintiff claims to seek restitution for (1) funds that were allegedly garnished by the California Franchise Tax Board, and (2) for a $5,000 tax penalty allegedly issued by the California Franchise Tax Board. Resp. at 12. As an initial matter, such claims asserted in his Response brief are waved. *Kimble*, 991 F.3d at 1244 ("[D]istinct claims are waived if not pled in a complaint."). Even if properly asserted however, this Court would still lack subject matter jurisdiction to hear such claims because the alleged actions are attributable to the California Franchise Tax Board, a state entity, not to the United States. *See Sherwood*, 312 U.S. at 588 ("[I]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of [this] court."); 28 U.S.C. § 1491(a).

jurisdiction . . . in cases not sounding in tort.").  Nor is this Court able to award punitive damages as a general matter.  *Maddox v. United States*, No. 25-1257, 2025 WL 1949636, at *2 (Fed. Cir. July 16, 2025).

<b><u>CONCLUSION</u></b>

Accordingly, for the reasons stated above, the Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 16) pursuant to rules 12(b)(1) and 12(h)(3).  Plaintiff's Amended Complaint is **DISMISSED** without leave to replead.  The Court **GRANTS** Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 3) as Plaintiff submitted documentation satisfying the statute's requirements.  *See* 28 U.S.C. § 1915.  The Clerk of Court is **DIRECTED** to enter Judgment accordingly.

IT IS SO ORDERED.



*Eleni M. Roumel*
ELENI M. ROUMEL
Judge